## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| SUPERIOR OFFSHORE | § | Bankruptcy Case No. 08-32590 |
| INTERNATIONAL, INC., | § | |
|     Debtor/Appellee | § | |

--------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | § | |
| LOUIS E. SCHAEFER, JR. and | § | **CIVIL ACTION NO. H-09-0688** |
| SCHAEFER HOLDINGS, LP, | § | |
|     Appellants. | § | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the Court on appeal from the United States Bankruptcy

Court for the Southern District of Texas.  Appellants Louis E. Schaefer, Jr. and

Schaefer Holdings, LP (collectively, "Schaefer") challenge the Order Approving

Compromise and Settlement [Doc. # 1333 in Bankruptcy Case 08-32590] issued

February 27, 2009 by United States Bankruptcy Judge Wesley Steen.  Appellants filed

their Brief [Doc. # 4], Debtor/Appellee Superior Offshore International, Inc. ("SOI")

filed a Brief [Doc. # 8], to which Appellants filed a Reply Brief [Doc. # 9].  Appellees

Post-Confirmation Committee and Cross Logistics, Inc. ("Cross") also filed a Brief

[Doc. # 10], to which Appellants filed a Reply Brief [Doc. # 11].  The Court, having

reviewed the full record and having applied the governing legal authorities, *affirms* the Bankruptcy Court.

## I.   **BACKGROUND**

SOI, when it was an operating company, provided subsea design, construction, and other services to the oil and gas industry.  Appellants own almost 50% of the SOI stock.

SOI provided diving and construction services to BP Trinidad and Tobago, LLC ("BP") on a subsea construction project in Trinidad.  Cross provided a diving support vessel and related support personnel to SOI in connection with the Trinidad project. SOI billed BP a total of $116,916,817.00 during the approximately eight months that the Trinidad project was ongoing, and BP paid $97,690,845.00 to SOI.  Cross claimed that SOI owed it $3,565,944.96 for services it provided to SOI.

On April 24, 2008, SOI filed a voluntary bankruptcy petition under Chapter 11. The BP receivable was a significant asset of the bankruptcy estate.  Malcolm Lovett, Jr., originally SOI's chief reorganization officer and later the Plan Agent under the confirmed plan, assembled a team to review the BP dispute.  The review identified a number of serious problems with SOI's ability to substantiate the amount owed.

SOI's disputes with BP and Cross were mediated over two days in November 2008 before retired Bankruptcy Judge Gerald H. Schiff.  The parties, represented by

counsel, reached a comprehensive settlement of the disputes.  Under the settlement, BP would make a cash payment of $11.7 million and pay Trinidad's 15% value added tax.  SOI agreed to pay Cross $3,215,944.96.  Additionally, the parties agreed to exchange releases.

On December 23, 2008, SOI and the Committee of Unsecured Creditors ("Committee") filed a joint motion for approval of the settlement.  The Equity Committee incurred more than $250,000.00 in professional fees reviewing the settlement.  Appellants were the only party to object to the settlement.

On February 27, 2009, the Bankruptcy Court conducted an evidentiary hearing on the proposed settlement.  After considering the evidence and the parties' arguments, and after considering the applicable legal requirements for approval of a settlement, Bankruptcy Judge Steen approved the settlement and issued the Order Approving Compromise and Settlement.

Appellants filed a timely Notice of Appeal.  The appeal has been fully briefed and is ripe for decision.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

A bankruptcy court's approval of a compromise settlement is reviewed for an abuse of discretion.  *Matter of Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir.

1995) (citing *In re Jackson Brewing Co.,* 624 F.2d 599, 602-03 (5th Cir. 1980));
*Matter of Schweitzer*, 270 F. App'x 344, 345 (5th Cir. Mar. 20, 2008).  A bankruptcy
court abuses its discretion when it "(1) applies an improper legal standard or follows
improper procedures . . ., or (2) rests its decision on findings of fact that are clearly
erroneous."  *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

    This Court reviews a bankruptcy judge's conclusions of law *de novo* and
findings of fact under the "clearly erroneous" standard.  *Barron v. Countryman*, 432
F.3d 590, 594 (5th Cir. 2005).  A "factual finding is not clearly erroneous if it is
plausible in the light of the record read as a whole."  *In re Ramba, Inc.*, 416 F.3d 394,
402 (5th Cir. 2005).  "As long as there are two permissible views of the evidence," the
bankruptcy court's "choice between competing views" is not clearly erroneous.  *In re
Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (citing *Anderson v. Bessemer City*, 470 U.S.
564, 574 (1985)).

    **B.    Standard for Approval of Settlement**

    A bankruptcy court "should approve [a] settlement only when the settlement is
fair and equitable and in the best interest of the estate."  *Foster Mortgage*, 68 F.3d at
917 (citing *Jackson Brewing Co.*, 624 F.2d at 602).  The bankruptcy judge is required
to compare the "terms of the compromise with the likely rewards of litigation."  *Id.*
(citations omitted).  The bankruptcy court must consider:

> (1)    the probability of success in the litigation, with due consideration
>        for the uncertainty in fact and law,
>
> (2)    the complexity and likely duration of the litigation and any
>        attendant expense, inconvenience and delay, and
>
> (3)    all other factors bearing on the wisdom of the compromise.

*Id.* (quoting *Jackson Brewing,* 624 F.2d at 609).

Among the "other factors" to be considered is the "paramount interest of creditors with proper deference to their reasonable views" because "the interests of the creditors not the debtors are paramount." *Id.* The bankruptcy court "should carefully consider the wishes of the majority of the creditors." *Id.* (citation omitted). The extent to which the settlement is the result of arms-length negotiation is also an "other factor" to be considered by the bankruptcy court. *Id.* at 918.

## III.   ANALYSIS

### A.    SOI's Probability of Success in the Dispute with BP and Cross

The record clearly establishes that Judge Steen fully and correctly considered the probability that SOI would succeed in its dispute with BP and with Cross. Judge Steen found SOI's probability of success to be "not good." *See* Hearing Transcript [Doc. # 1363 in Bankruptcy Case No. 08-32590], p. 156. Judge Steen noted that SOI's "books and records are in disarray," that SOI "mischarged on the contract" and "mismanaged the contract" with BP, and that SOI could not "establish through its books and records that the claims against BP are accurate." *Id.* at 157. Judge Steen

characterized SOI's claim regarding how much BP owed as "not credible at best." *Id.* Judge Steen's findings on the first factor are fully supported by the record.

**B.      Complexity and Likely Duration/Expense of BP Litigation**

Judge Steen also considered the complexity and likely duration of litigation with BP and Cross, as well as the attendant expense, inconvenience and delay.  Judge Steen found that BP "would be a well-financed adversary likely to prolong litigation." *Id.* at 158.  He found that the estate would benefit more from "money received today as opposed to many years in the future." *Id.* at 162.  His findings on this factor are well-supported and accurate.

**C.      Other Factors Bearing on the Wisdom of the Settlement**

Judge Steen also considered the "other factors" relevant to the wisdom of the proposed settlement.  He considered the interests of the creditors, specifically the wishes of the majority of the creditors.  He noted that "of all the creditors and all the equity security holders in the case, only one is opposed to settlement." *Id.* at 158.  He noted further that, after conducting a thorough investigation, the "Unsecured Creditors' Committee, the Equity Committee, [and] the Debtor's counsel all approved the transaction and support it." *Id.* at 159-60.

Although Judge Steen did not discuss the extent to which the settlement is the result of arms-length negotiation, it is clear from the record that the settlement was the

result of a two-day mediation process assisted by a retired bankruptcy judge with all parties represented by experienced, capable attorneys.  There is nothing to indicate that the settlement was the result of anything other than an arms-length negotiation.

Appellants complain that Judge Steen failed to give proper consideration to additional "other factors," including the absence of consent from SOI's liability insurer, the high proportionate recovery by Cross under the settlement, and the potential effect of the settlement on SOI's defense to a claim by another party.  Judge Steen did, however, consider the absence of insurer consent.  He noted that parties with a large financial interest in the availability of insurance coverage were not objecting to the settlement.  *Id.* at 163.  Judge Steen also noted that the potential adverse effect from not having the liability insurer's consent was speculative, requiring new objections that had not yet been made, assertion of third-party claims in related securities fraud litigation that had not yet been made, and the presentation of a different defense in the securities fraud lawsuit.  *Id.*  Judge Steen considered the issue regarding the failure to obtain consent to the settlement from SOI's liability insurer and determined that it was not an adequate basis for refusing to approve the settlement.  His decision is well-reasoned and is not an abuse of discretion.

Judge Steen also considered Appellants' challenge to the proposed settlement based on Cross recovering a higher proportion of its debt than might be available

under the parties' contracts.  Judge Steen noted that the evidence did not support Appellants' characterization of what amount the contracts would provide for Cross. *See id.* at 164.   Judge Steen also found that, even assuming Appellants' characterization were correct, the contracts would not apply in a negotiated general settlement under which BP would pay a fixed amount not directly correlated to any particular invoices and, similarly, Cross would receive a fixed, negotiated amount. *Id.* at 164-65.  As a final matter, Judge Steen noted that SOI had not received payment from BP before filing bankruptcy and, therefore, the terms of the confirmed plan govern what Cross would be paid, not any pre-existing contracts.   The record establishes that Judge Steen considered this factor, made findings that are supported by the record, and did not abuse his discretion by approving the settlement.

Appellants are correct that Judge Steen apparently did not consider any adverse effect the settlement might have on SOI's defense to other claims, particularly those asserted by Seamec, Ltd. ("Seamec") for alleged breach of a charter agreement on the Seamec III in the amount of $4,413,791,46.  Appellants believe that Seamec has contracts with SOI that are similar to the contracts between SOI and Cross and, therefore, the settlement provision for a fixed amount to be paid to Cross will have a negative impact on SOI's ability to oppose Seamec's claim.  Seamec, however, is not a party to the settlement.   Its claims against the estate, and the claims of other

creditors, are not covered by or affected by the settlement with BP and Cross.  Judge Steen did not err in declining to consider this "factor" and did not abuse his discretion by approving the settlement involving SOI, BP, and Cross.

## IV.    <u>CONCLUSION</u>

The Bankruptcy Court conducted a thorough evidentiary hearing and properly considered the relevant factors set forth in *Foster Mortgage*.  The Bankruptcy Court's findings on the relevant factors, as well as the ultimate finding that the proposed settlement was fair and equitable and in the best interest of the bankruptcy estate, are not clearly erroneous.  There are valid reasons for approving the settlement in this case, particularly given the significant problems with SOI's ability to substantiate the amount it was owed by BP.  The Bankruptcy Court's decision to approve the proposed settlement was supported by the record and was not an abuse of discretion. Accordingly, it is hereby

**ORDERED** that the February 27, 2009 Order Approving Compromise and Settlement is **AFFIRMED**.  The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this 28th day of **May, 2009.**

Nancy F. Atlas
United States District Judge